IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEEN NIFAS, | **)** | |
| | **)** | |
| Plaintiff, | **)** | Civil Action No. 10-1486 |
| | **)** | |
| v. | **)** | District Judge Joy Flowers Conti |
| | **)** | Magistrate Judge Cynthia Reed Eddy |
| BRIAN V. COLEMAN, Superintendent; | **)** | |
| ET AL., | **)** | |
| Defendants. | **)** | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

For the reasons that follow, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 57) be granted in part and denied in part. Specifically, Defendants' Partial Motion to Dismiss should be granted, and the Complaint dismissed, except as to Plaintiff's claims in Count 2 of the Amended Complaint against Defendants Coleman, Berrier, Zaken, Manchas, Hooper, D. Varner, Rymarowicz, Clark, Williams, Knizner, Barkley, Castello, Eicher and DiCio; all other Defendants should be terminated from this action.

### II.   REPORT

Plaintiff, Rasheen Nifas, is a Pennsylvania inmate currently is housed at the State Correctional Institution at Fayette, Pennsylvania. He commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against twenty-seven Defendants employed by the Pennsylvania Department of Corrections (DOC), the majority of whom were employed at SCI-Fayette during the relevant time period. Defendants include: Brian Coleman, Superintendent; T. Zaken, Major; T. Berrier, Captain of the Restricted Housing Unit (RHU); W. Leggett, Captain of the RHU; E. Manchas, Security Captain; S. Rymarowicz, Lieutenant of L Block in the RHU; R. Clark, Lieutenant of L Block in the RHU; D. Hooper, Security Lieutenant; C. Abregg, Lietenant;

V. Knizner, Sergeant; Barkley, Correctional Officer; D. Costello, Correctional Officer; Eicher, Correctional Officer; A. Roll, Correctional Officer; K. Cross, Hearing Examiner; P. Yetter, Unit Manager; T. Cesarino-Martin, Unit Manager; R. Petrus, Unit Manager; J. Monas, Unit Manager; M. Varner, Activity Manager; I. DiCio, Nurse; D. Varner, Chief Grievance Examiner; T. Williams, Chief Grievance Examiner; R.F. Collins, Correctional Officer; R.B. MacIntire, Chief Hearing Examiner; T. Mark, Chief Hearing Examiner Coordinator.

## A. Standard of Review

Presently pending is Defendants' Partial Motion to Dismiss (ECF No. 57). A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. In deciding this motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. *See also* Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must

state a claim that is plausible on its face) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. <u>Pension Benefit Guar. v. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id*. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. <u>Spruill v. Gillis</u> 372 F.3d 218, 223 (3d Cir. 2004); <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." <u>Higgins v. Beyer</u>, 293 F.3d 683, 688 (3d Cir.2002) (quoting <u>Holley v. Dep't of Veteran Affairs</u>, 165 F.3d 244, 247–48 (3d Cir.1999)). *See also* <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir.1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting <u>Higgins</u>, 293 F.3d at 688). Notwithstanding this liberality, *pro se* litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g.*, <u>Taylor v. Books A Million, Inc.</u>, 296 F.3d 376, 378, (5th Cir.2002); <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 2102 (10th Cir.1996).

**B. Plaintiff's Allegations**

Plaintiff is serving a life sentence for first degree murder committed on or about October 24, 1989, when he was only 20 years old. *See* Nifas v. Beard, Civil No. 08-834, 2009 WL 3241871 (W.D. Pa. Oct. 6, 2009). During his first eight years in prison, he received thirty-two misconducts and eleven orders directing his "separation" from two inmates and five staff (four of whom are females). He was transferred from SCI-Dallas to SCI-Fayette in May of 2006 because of his harassment of three female staff there. Nifas v. Beard, 374 F. App'x 241, 243 (3d Cir. 2010).

In his Amended Complaint, Plaintiff makes numerous claims against Defendants with respect to his conditions of confinement at SCI-Fayette. In Count One, he claims that Defendants Coleman, Berrier, Manchas, Leggett, Abergg, Hooper, Rymarowicz, Knizner, Roll, Collins, and Stroutman violated his rights as protected by the First Amendment by retaliating against him for filing lawsuits and grievances. Specifically, he alleges the following: Defendant Stroutman falsified Misconduct No. A775371 and confiscated his legal mail as documented in confiscation slip No. A877469; Defendant Aberegg falsified Misconduct No. A775371 and ordered a cell search to steal and read legal mail; Captain Leggett allegedly moved Plaintiff to a dry cell while Defendant Roll kept him there; Captain Manchas and Hooper falsified security reports; Knizner opened his legal mail, deprived him privileges and used excessive force; Rymarowicz falsified grievance responses and frivolously moved his cell; Collins falsified Misconduct No. B001512; Berrier vilified grievance responses, staged excessive use of force and engaged in cell moves; and Coleman failed to act.

In Count 2, he asserts violation of his rights as protected by the Eighth Amendment. Specifically, he claims that Defendants Coleman, Zaken, Berrier, Manchas, Hooper and D. Varner failed to protect him from the constant threats of violence and ongoing sexual harassment

from the RHU block workers. He further asserts that Defendants Colemen, Berrier, Manchas, Hooper, Rymarowicz, Clark and Williams failed to take reasonable measures to protect his safety when the block workers tried to spray detergent in his eyes for reporting the sexual abuse. He also claims that Defendants Colemen, Zaken, Berrier, Manchas, Hooper, Rymarawicz, Clark, D. Varner and Williams disregarded a substantial risk of serious harm. He further claims that Defendants Knizner and Barkley used excessive force by ramming Plaintiff's head into the steel edge of the L-Block entrance and Defendants Castello and Eicher used excessive force by jumping on his back and right shoulder after he was subdued. Finally, he claims that Nurse DiCio denied him medical treatment for three and one-half hours following this incident.

In Count 3, Plaintiff asserts violations of his rights as protected by the Fourteenth Amendment with respect to his misconduct proceedings.[1]

## C. Official Capacity

Plaintiff seeks to assert liability against Defendants in their official and individual capacities. A suit against a state government official in his official capacity is really a suit against the state. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). Thus, a suit against Defendants in their official capacity is considered a suit against the Commonwealth of Pennsylvania. See Callahan v. City of Philadelphia, 207 F.3d 668 (3d Cir. 2000). As argued by Defendants, Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment to the United States Constitution. In this regard, the withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in

---

[1] This Court may review only those claims that have been fully exhausted as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C.A. § 1997e (a). In the instant action, Plaintiff claims that he has exhausted all of the claims he raised in his Amended Complaint. Defendants do not dispute this assertion. Thus, this Court will review his claims.

the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state, *see* <u>Regents of the University of California v. Doe</u>, 519 U.S. 425 (1997); <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the States' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g.*, <u>Pennsylvania v. Union Gas Co.</u>, 491 U.S. 1, 15 (1989) (Commerce Clause, which allows Congress to restrict interstate trade activity); <u>Atascadero State Hospital v. Scanlon</u>, 473 U.S. 234, 246 (1985) (section five of the Fourteenth Amendment, which allows Congress to enforce the provisions of the Fourteenth Amendment). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 55 (1996); Atascadero, 473 U.S. at 246.

The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa. Cons. Stat. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa. Cons. Stat. § 8522 are applicable to the Plaintiff's allegations. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted

the Civil Rights Act, 42 U.S.C. § 1983.  *See, e.g.*, <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66 (1989) ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); <u>Quern v. Jordan</u>, 440 U.S. 332, 341 (1979); <u>Boykin v. Bloomsburg Univ. of Pa.</u>, 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), aff'd, 91 F.3d 122 (3d Cir. 1996).  Consequently, Plaintiff's Complaint must be dismissed against all of the Defendants in their official capacity.  <u>Johnson v. Wenerowicz</u>, 440 F. App'x 60, 62-63 (3d Cir. 2011) (affirming District Court's conclusion that the Eleventh Amendment affords DOC defendants protection from suit in their official capacities); <u>Tindell v. Beard</u>, 351 F. App'x 591, 595 (3d Cir. 2009) (same).  To the extent the DOC defendants are sued in their individual capacities, these claims are discussed below.

### D. Liability under 42 U.S.C. § 1983

Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).  Accordingly,

individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly. Carter v. Smith, Civil No. 08-279, 2009 WL 3088428, 6 (E.D. Pa. Sept. 22, 2009). *See also* Atkinson v. Taylor, 316 F.3d 257, 270 (3d Cir. 2003).

### E. First Amendment - Retaliation

In Count One, Plaintiff claims that Defendants Coleman, Berrier, Manchas, Leggett, Abergg, Hooper, Rymarowicz, Knizner, Roll, Collins, and Stroutman violated his rights as protected by the First Amendment by retaliating against him for filing lawsuits and grievances. Specifically, he alleges the following: Defendant Stroutman falsified Misconduct No. A775371 and confiscated his legal mail as documented in confiscation slip No. A877469; Defendant Aberegg falsified Misconduct No. A775371 and ordered a cell search to steal and read legal mail; Captain Leggett allegedly moved Plaintiff to a dry cell while Defendant Roll kept him there; Captain Manchas falsified security reports; Knizner opened his legal mail, deprived him privileges and used excessive force; Rymarowicz falsified grievance responses and frivolously moved his cell; Collins falsified Misconduct No. B001512; Berrier vilified grievance responses, staged excessive use of force and engaged in cell moves; and Coleman failed to act. Plaintiff alleges that these actions were the result of retaliation for his filing grievances and lawsuits.

It is well settled that retaliation for the exercise of a constitutionally protected right may

violate the protections of the First Amendment, which is actionable under section 1983. Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990). However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

With respect to the first factor, it is well settled that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right. Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). Accordingly, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges he was denied. Rauser, 241 F.3d at 333. Rather, the first requirement a Plaintiff must show is that the conduct which led to the alleged retaliation was constitutionally protected. *Id*. A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about a guard's misconduct). Plaintiff claims that the retaliation was the result of his filing grievances and complaints. Thus, he has alleged the first element of a retaliation claim.

The second element requires a prisoner to show that he suffered some "adverse action" at the hands of the prison officials. A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See* Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). Adverse actions that are sufficient to support a retaliation claim include filing false misconduct reports, Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003), transferring a prisoner to another prison, Rauser, 241 F.3d at 333, and placing a prisoner in administrative custody, Allah, 229 F.3d at 225.

The third factor requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. Rauser, 241 F.3d at 333-34. This may be established by evidence of a temporal proximity between the prisoner's protected activity and the defendant's adverse action; however, the timing of the alleged retaliatory action must be suggestive of retaliatory motive. *See* Lauren W. ex rel. Jean W. v. Deflaminis, 480 F.3d 259, 267 (3d Cir. 2007) (to show a causal connection, a plaintiff must prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link"); Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. Mt. Healthy, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional

right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In establishing the elements of a retaliation claim, a plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation from which a jury could find that the plaintiff had carried his burden of proving the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (internal citations omitted). Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. See Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), cert. denied, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995). Finally, allegations of de minimis acts of retaliation do not state a claim under § 1983. Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (holding that a de minimis retaliatory act is outside the ambit of constitutional protection). Using these precepts, the Court will review Plaintiff's retaliation claims.

1.    Improper handling of grievances and complaints

Plaintiff makes some allegations that Defendants improperly handled his grievances and appeals. Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. This objective inquiry is not static across contexts; it must be tailored to the different circumstances in which retaliation claims arise. Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir. 1999) ("Prisoners may be required to tolerate more than public employees, who

may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse.").

It is not at all clear that the rejection or denial of a grievance, or any similar action, constitutes an "adverse action" as required to state a retaliation claim.

> It is doubtful that rejection or denial of a grievance constitutes the kind of adverse action that would deter a person of ordinary firmness from exercising constitutional rights. In this regard, the grievance process contains multiple levels of review, allowing an inmate to redress mistaken rejections or denials. Thus, the mere fact that a grievance has been rejected or denied would not seem to be that kind of conduct that would deter an inmate or ordinary firmness from pursuing the grievance process. Certainly, Alexander has not been deterred from utilizing the grievance processes established by the Department of Corrections.

Alexander v. Forr, Civil No. 04-0370, *4, 2006 WL 2796412 (M.D. Pa. Sept. 27, 2006). Moreover, proper exhaustion is required in order to bring a federal civil rights action. Therefore, it seems unlikely that the mere denial of a grievance or denial of a grievance appeal ever would serve to deter a prisoner from filing grievances and/or lawsuits in the future. Thus, Plaintiff has failed to allege the second factor as to his retaliation claim regarding the alleged improper handling of his grievances and misconducts. Consequently, Defendants are entitled to judgment as to this claim.

2.    Misconduct Reports

Plaintiff alleges that Defendants Stroutman, Aberegg and Collins were involved in filing false misconduct charges against him. The filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false. In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance. See Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), cert. denied, 119 S.Ct. 246

(1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S.Ct. 2584 (1995). *See also* Alexander v. Fritch. 396 F. App'x 867, 874 (3d Cir. 2010) (holding that "because there was evidence to support the hearing examiner's finding of guilt, there was a legitimate penological reason for the charge and punishment"); Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002) (noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Here, Plaintiff received three misconduct charges. In A775371, he was charged with the following: #35 - refusing to obey an order; #38 - destroying property; #33 using abusive language; #29 – engaging in unauthorized activity; and #44 – loaning or borrowing property (ECF No. 57-1, p. 2). In his report, Defendant Stroutman provided the following reasons for the misconduct.

> On [November 28, 2008 at 7:30 p.m.] while conducting day room on delta pod Officer Ankom and Stroman observed I/M Nifas CA4950 fishing from his cell.[2] After the day room was terminated I/M Nifas cell LD 1005 was searched per order of Lt. Aberegg. Officers reported to cell and ordered I/M Nifas to turn on his light and strip out for a cell search. I/M turned on light and then threw two bags into his toilet and was ordered not to flush, but flushed anyway. I/M was told again to come to the door. I/M then placed fishing line into his toilet from his floor and again was ordered not to flush, but did again. When I/M's cell was finally searched misc. contraband was found along with a letter telling the I/M to tell the I/M next to his cell to order paid envelopes and three yellow legal pads and then give him smoke but not all of it. See CIR #A877469. When leaving I

---

[2]  In prison, inmates occasionally use fishing line to surreptitiously pass contraband between cells. Because of the security threats which this behavior presents, this practice is forbidden, inmates are prohibited from possessing fishing line, and fishing line is defined as illegal contraband in an institutional setting. *See* Ball v. Campbell, Civil No. 11-2239, 2011 WL 7080692, 2 (M.D. Pa. Dec. 9, 2011).

informed the I/M he would be getting a writeup. I/M repled with "I'll see your little ass in court bitch."

ECF No. 57-1, p. 2.

At the misconduct hearing, the hearing examiner, Kerri Cross, dismissed charges 29 and 44 but found Plaintiff guilty of charges 35, 33 and 38. Specifically, she found as follows.

> The examiner finds report to be credible. I believe on 11-28-08 the C/O observed Nifas "<u>fishing</u>" from his cell. The cell was searched and the C/O observed Nifas put <u>something</u> in the cell toilet (#38). Despite orders not to flush the toilet – the inmate flushed the toilet constituting #35. In addition, I find Nifas was abusive telling the C/O, "I'll see your little ass in court, bitch."

ECF No. 57-1, p. 3 (emphasis in original).

This constitutes "some evidence" sufficient to support a prison disciplinary conviction. *See* <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985). [3] *Accord* <u>Speight v. Minor</u>, 245 F. App'x 213, 217 (3d Cir. 2007) ("As the District Court correctly noted, the disciplinary hearing record, specifically the charging officer's report, although meager, constitutes some evidence supporting the DHO's decision in Speight's case.").

On March 13, 2010, Plaintiff received Misconduct No. B001512 charging him with #35 refusing to obey an order, #42 lying to an employee, and #46 theft of services, cable TV. The report, written by Defendant Collins, provides as follows.

> Upon doing rounds on the above day this officer noticed a cable cord running from Nifas TV to cable box. Upon investigation it was found that I/M does not subscribe to cable services. This officer along with two other COs conducted a cell search. I/M Nifas was given a direct order to come to door and cuff up. I/M refused to do so and walked toward cable box. I/M was given an additional order at [which] point I/M grabbed cord and pulled it from wall. When

---

[3] The "some evidence" standard does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455-56 (1985). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* *Accord* <u>Simpson v. Bledsoe</u>, 378 F. App'x 198, 200 (3d Cir. 2010).

this officer brought this to I/M attention I/M stated it wasn't plugged in as it was seen to be by this officer and two others.

ECF No. 57-1, p. 11.

At the misconduct hearing, the hearing examiner dismissed charge 42 but found Plaintiff guilty of charges 35 and 46 (attempt). Specifically, she found as follows.

> Nifas pleads not guilty. Submits version which he explained. States he requested business manager as witness – however after consideration examiner finds witness is not needed to establish guilt/innocence. The examiner believes report and eye witness account to be credible. I believe Nifas attempted to steal cable when 3 staff members witnesses a cord from the cable box attached to Nifas TV. In addition, I find Nifas refused orders to cuff up when he did not comply – but ripped the cable from the wall constituting #35.

ECF No. 57-1, p. 12.

On March 15, 2010, Plaintiff received Misconduct No. B001521 charging him with #1 Assault. The report, written by Defendant Knizner, provides as follows.

> On the above date and time, this Sgt and Officer Barkley was [sic] escorting I/M Nifas to "J" Block. While at the "L" Block entrance, I saw I/M Nifas kick at I/M Rodriguez. I/M Nifas was then placed on the ground and secured.

ECF No. 57-1, p. 23.

At the misconduct hearing, the hearing examiner found Plaintiff guilty and sanctioned him with 60 days of disciplinary custody. Specifically, she found as follows.

> On 3-19-10 this examiner reviewed video evidence of this incident. The tape reveals that as Nifas was being escorted out of L-block – the inmate turns to his right making a kicking motion. Escorting staff then placed Nifas on the floor in the L-blk entrance area - <u>All info shared.</u>
> . . .
> Nifas pleads not guilty. Submits written version. Nifas states the dude sprayed stuff – claims it was a set-up. The examiner finds report to be clear and credfible. I note video evidence of the incident supports the report. I believe on 3-15-10 during an escort from L-block Nifas attempted to assault Rodriquez when Nifas kicked toward the other inmate constituting #1. I note any attempt to commit a misconduct is same as completed fact.

ECF No. 57-1, p. 24.

Plaintiff was found guilty of the misconducts based upon some evidence that he did engage in the acts he was accused of. Thus, even if Plaintiff had presented sufficient evidence to support his *prima facie* case of retaliation (a holding this Court specifically does not make), he is essentially barred from succeeding on his retaliation claim because the findings of guilt as to the misconduct charges conclusively establishes that the defendants would have taken the same actions regardless of any protected activity engaged in by Plaintiff. *Accord* Nifas v. Beard, 374 F. App'x. 241, 244 (3d Cir. 2010) (holding that Nifas's retaliatory discipline claim fails because there is "some evidence" supporting the guilty findings for the three disciplinary charges brought against Nifas after he filed his grievance), *cert. denied*, ___ U.S. ___, 131 S.Ct. 2103 (2011); Romansky v. Stickman, 147 F. App'x 310, 312 (3d Cir. 2005). Consequently, Plaintiff's retaliatory misconduct claims must be dismissed.

3.      Confiscation of legal mail

Plaintiff alleges that Defendants Stroutman and Aberegg confiscated his legal mail as documented in confiscation slip No. A877469. Plaintiff does not identify any grievances against Defendants Stroutman and Aberegg that were filed before the cell search of November 28, 2008. Thus, Plaintiff has failed to plead a causal link between the protected activity and the alleged action and the retaliation claims against Defendant Stroutman and Aberegg regarding the confiscation of legal mail should be dismissed.

4.      Dry cell

Plaintiff claims that Captain Leggett allegedly moved Plaintiff to a dry cell while Defendant Roll kept him there. Plaintiff claims that this action was in retaliation for his filing grievances and a previous lawsuit naming Defendant Leggett, that was filed on June 17, 2008 in Civil Action No. 08-834. The record shows that Plaintiff was moved to an observation cell on J-

Block on December 4, 2008 (ECF No. 70-1, p. 32). The grievance against Leggett was filed on that same date. The grievance against Defendant Roll was filed on December 11, 2008, the date that he allegedly told Plaintiff that he did not want to move him from the cell. Thus, Plaintiff has failed to allege the second element of a retaliation claim as there is no causal link between the protected activity and the alleged action.

Moreover, the lawsuit filed on June 17, 2008 does not suffice to show any causal proximity between the protected activity and the action on December 4, 2008 in moving Plaintiff to an observation cell. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that in order to establish a causal link for retaliation, the timing of the allegedly retaliatory action must be "very close" to the protected activity). Thus, Plaintiff has not alleged the second element with respect to his First Amendment retaliation claim against Defendants Leggett and Roll with respect to placing and keeping him in the observation cell.

5.    False Security Reports

Plaintiff alleges that Defendants Manchas and Hooper retaliated against him by falsifying security reports. To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. at 556. Under this revised standard, the mere metaphysical possibility that plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims. The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Id.* at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Here, Plaintiff's bald allegations do not state a claim upon which relief may be granted. His Response to Defendants' Motion does not cure this defect. Moreover, Plaintiff has filed an Amended Complaint and need not be given yet another opportunity. Consequently, his retaliation claims against Defendants Manchas and Hooper should be dismissed.

6.  Defendant Knizner

Plaintiff alleges that Defendant Knizner retaliated against him by constantly opening his legal mail and by denying him privileges. Again, both of the grievances Plaintiff filed against Defendant Knizner postdated the alleged adverse action; thus, there is no causal link to establish any retaliation. Moreover, the responses to Plaintiff's grievances reveal that allowing Plaintiff to file an amended complaint as to this claim would be futile.

In this regard, on September 17, 2009, Plaintiff filed Grievance No. 289529 regarding alleged tampering with his mail. On September 29, 2009, he received the following initial response.

The following is a summary of my findings regarding your grievance:

GRIEVANT STATEMENT: I am in receipt of your grievance and have been assigned to investigate your concerns. You allege that on 9-17-09, you received legal mail that was opened. You claim that Sgt. Knizner is reading your legal mail and tampering with your legal documents. You also accuse Sgt. Knizner of throwing away legal material and you go into a grand conspiracy theory against the 2-10 shift.

FINDING OF FACT: On 9-29-09, I attempted to interview you. You refused to act reasonably and answer my questions. I explained to you that I am the investigating officer and you made very serious allegations against staff members in the Restricted Housing Unit. You stated "I am not signing off and I am not changing anything on the grievance". I attempted to explain to you that I do not understand parts of the grievance at hand and need further clarification. I never asked you to sign off on the grievance and I never asked you to change anything. Due to your lack of cooperation I am denying your grievance.

CONCLUSION: This grievance is denied due to lack of cooperation by Inmate Nifas CA4960 during the interview process.

ECF No. 70-2, p. 29.  On appeal, Superintendent Coleman responded as follows.

> I am in receipt of your appeal of grievance #289529. In preparing this response I have reviewed your original grievance, the Grievance Officer1s response, and your appeal to this office.
>
> You have provided no proof of your allegations.  Lt. Rymarowicz attempted to interview you so you could explain your allegations and provide proof and you refused to cooperate.  Therefore, your allegations cannot be substantiated.
>
> Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review.  I am upholding the Initial Review Response and denying your appeal.

ECF No. 70-2, p. 27.

On September 19, 2009, Plaintiff wrote Grievance No. 289531 claiming that he was being denied phone call privileges.  On September 29, 2009, he received the following initial response.

> The following is a summary of my findings regarding your grievance:
>
> GRIEVANT STATEMENT:  I am in receipt of your grievance and have been assigned to investigate your concerns.  You state on 9-19-09, and several other occasions, you have been denied general and legal phone calls.  You state that you were approved to make a phone call and Sgt. Knizner refused you access to a phone.  You claim that you have very important legal calls to make and Mr. Hughes stated that you can not make phone calls on the 0600-1400 shift without first verifying that an emergency exists.  You further state that Sgt. Knizner constantly throws away your legal mail.
>
> FINDING OF FACT:  On 9-29-09, I began investigating your concerns.  Because you are housed in the Restricted Housing Unit the Program Review Committee must authorize the use of the telephone.  The P.R.C. did authorize you a phone call on 8-27-09, and you received your phone call on 8-29-09.  The P.R.C. authorized you another phone call on 9-17-0:9, and you received that call on 9-24-09.  You have not been denied any phone calls that the P.R.C. has authorized. Your allegations against Sgt. Knizner are simply not true.
>
> I spoke with Mr. Hughes your unit manager.  He stated to me that the procedure for legal calls has been explained to you. If you need to speak with your attorney during the 0600-1400 shift then you can correspond with him or her through the

mail and make the appropriate arrangements. Your attorney can contact our litigation coordinator and set up a phone call. You have not made an attempt to do this. The procedure is clear.

You can also call your attorney during your P.R.C. authorized telephone call. It is unreasonable to believe that your attorney will not accept your call after 1400 hours. Your allegation about your legal mail was answered in grievance number 289529.

CONCLUSION: This grievance is frivolous and denied in its entirety.

ECF No. 70-2, p. 36. On appeal, Superintendent Coleman responded as follows.

I am in receipt of your appeal of grievance #289531. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office.

The answer from Lt. Rymarowicz is correct. You requested a phone call from PRC twice and you were given two phone calls. Mr. Hughes explained the procedure for you to request a legal phone call but you have not followed his instructions. You have offered no proof that you have been denied access to the courts or deprived of the right to a legal call.

Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review. I am upholding the Initial Review Response and denying your appeal.

ECF no. 70-2, p. 34.

The responses to Plaintiff's grievances show that Plaintiff cannot show the requisites for establishing a retaliation claim against Defendant Knizner. Thus, these claims should be dismissed.

7.    Cell Changes

Plaintiff further alleges that Defendant Rymarowicz falsified grievance responses and frivolously moved his cell. As with most of his other claims, Plaintiff does not identify any grievances filed against Rymarowicz that pre-date the adverse action. To this end, Plaintiff's grievances show that Defendant Rymarowicz changed his cell on February 26, 2010 (ECF No.

70-3, p. 14) and that he reviewed Plaintiff's grievances on September 29, 2009 (ECF No. 70-2, pp. 29 & 36). His grievances against Defendant Rymarowicz were filed on February 28, 2010 (ECF No. 70-3, p. 23) and March 1, 2010 (ECF No. 70-3, p. 16). Thus, he has not alleged the required second element, *i.e.*, a causal link between the protected activity and the adverse action. Accordingly, his retaliation claims against Defendant Rymarowicz should be dismissed.

8.  Yard Denial

Plaintiff complains that Defendant Roll denied him yard exercise for two months. In this regard, on December 11, 2008, Plaintiff wrote Grievance No. 253618 against Defendant Roll claiming that he refused to move him out of the observation cell (ECF no. 70-2, p. 8). This grievance was not reviewed because Plaintiff was on grievance restriction where he was limited to filing one grievance every fifteen days (ECF No. 70-2, p. 6). On January 13, 2009, Plaintiff filed Grievance No. 257641 against Defendant Roll complaining that he has been denied yard for two months. In light of the fact that his previous grievance basically was ignored by DOC staff as he was on grievance restriction, plus the fact that he had been denied yard for two months on January 13, 2009 (*i.e.*, since November 13, 2008, which predates his December 11, 2008 Grievance), it is not plausible that the grievance was "a substantial or motivating factor" in any decision to restrict outside recreation. *Cf.* Gans v. Rozum, Civil No. 3:06–62J, 2007 WL 257127, *6 (W.D. Pa. Aug.31, 2007) (mere temporal connection between filing of civil rights complaint and exercise restriction is "too thin a reed" on which to hang a retaliation claim), *aff'd*, 267 F. App'x 178 (3d Cir.), *cert. denied*, 555 U.S. 844 (2008); Allah v. Al-Hafeez, 208 F.Supp.2d 520, 536 (E.D. Pa. 2002) ("a mere scintilla of evidence that there is a causal relationship between [the] protected activity and [the challenged action]" is insufficient).[4] Thus,

---

[4]  Moreover, it is doubtful whether Plaintiff has alleged that the alleged retaliatory action was

his retaliation claim against Defendant Roll for the alleged denial of outside yard exercise should be dismissed.

9.     <u>Defendant Berrier</u>

Plaintiff alleges that Defendant Berrier retaliated against him by changing his cell and by allowing sexual harassment and abuse by inmate Tamayo. As with his other claims, Plaintiff does not identify any grievances filed against Berrier that pre-date the adverse action. In this regard, Plaintiff filed Grievance No. 311359 against Defendant Berrier on March 17, 2010 (ECF No. 70-4, p. 14). On March 22, 2010, Major Zaken provided the initial response, as follows.

The following is a summary of my findings regarding your grievance:

COMPLAINT: You claim retaliation and abuse of process:
On March 15, 2010 Captain Berrier (RHU CAPTAIN) retaliated against you for filing previous grievances by deliberately and constantly moving you Cell to Cell.
You claim that a block worker on L Block has made several threats towards you, and that Captain Berrier allowed the block worker out of his cell to harm you.
You claim that Lt. Rymarowicz retaliated against you on March 15, 2010 by allowing a block worker while you were handcuffed behind your back to come out with cleaning supplies to spray in your eyes.
You state that you felt threatened physically by the block worker, and you received injuries because of this, to include several stitches in your head, shoulder and lower back pain.
You state this could only happen under the authority of Captain Berrier.

FINDING OF FACT: Captain Berrier was interviewed and denies your allegations of any type of retaliatory acts against you.
Lt. Rymarowicz was interviewed and denies all allegations of malfeasance towards you.
You have moved RHU cells four times over the past year while hou$ed in the L5 at SCI-Fayette. This includes one move following placement in an Observation cell in the Medical Department. You are a Level 5 inmate on the Restricted Release List; hence high-security precautions will be used with you to include

---

sufficiently adverse. *See* <u>Burgos v. Canino</u>, 358 F. App'x 302, 306–07 (3d Cir. 2009) (urinalysis, harassment, threats, temporary inconveniences, and denial of recreation did not rise to level of adverse action against prisoner); Gill v. Tuttle, 93 F. App'x 301, 303–04 (2d Cir. 2004) (to establish retaliation claim, inmate must allege adverse action that imposes a substantial impact on inmate).

regular cell moves. Four moves in a year is not excessive nor is it harassing under your housing status.

The claim of the block worker coming at you and you feeling threatened has been reported to the security office and is currently being investigated, as is your claims of injuries caused by abuse by Officers and said inmate.

Your injuries and claims of medical injuries have been addressed by the medical department.

DECISION: Your request for monetary compensation is denied. This Grievance is frivolous and without merit. This Grievance is Denied. Misconducts can not be grieved.

ECF No. 70-4, p. 13. On appeal, Superintendent Coleman provided the following response.

I am in receipt of your appeal of grievance #311359. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office.

No one is retaliating against you. Captain Berrier and Lt Rymarowicz are following policy regarding your moves. You have written two other grievances involving the alleged incident with the inmate worker. Your allegations were addressed in the one grievance and as Major Zaken informed you there is an on going investigation. You offer nothing in your grievance or appeal to substantiate any of your allegations.

Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review. I am upholding the Initial Review Response and denying your appeal.

ECF No. 70-4, p. 11.

The responses above make clear that Plaintiff can not allege a retaliation claim against Defendant Berrier. Plaintiff's cell changes were the result of a legitimate penological interest and Plaintiff's claims of sexual harassment were under investigation. Hence, Plaintiff's claims of retaliation should be dismissed against Defendant Berrier.

10.    Defendant Coleman

Plaintiff's final retaliation claim is that Superintendent Coleman failed to act. The only Grievance filed against Defendant Coleman is dated April 2, 2010 (ECF no. 70-4, p. 35), which,

again, post-dates the alleged adverse action. Moreover, Plaintiff does not allege that Defendant Coleman personally directed the retaliatory actions against him. Rather, he alleges that Coleman knew of and acquiesced in the retaliation because he took no action to stop the retaliation subsequent to Plaintiff's informing Coleman of the conduct. Here, the evidence shows that there was an on going investigation into Plaintiff's allegations of sexual harassment by another inmate. Even assuming that Coleman knew in fact of Plaintiff's allegations, it is not acquiescence on his part to allow his subordinates to do their duty with respect to investigating those allegations and to accept his subordinates' conclusions that Plaintiff's allegations lacked merit. *See also* Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (holding that a retaliation claim cannot rest on the logical fallacy of *post hoc*, *ergo propter hoc*, literally, "after this, therefore because of this."). Thus, Plaintiff's retaliation claim against Defendant Coleman should be dismissed.

### F. Eighth Amendment

In Count 2, Plaintiff seeks to invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. *Id.*, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993). The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.

The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff sets forth three separate Eighth Amendment claims in Count Two of his Amended Complaint: 1) failure to protect from threats, sexual harassment, and use of force by other inmates by Defendants Coleman, Zaken, Berrier, Manchas, Hooper, D. Varner,

Rymarowicz, Clark, and Williams (¶91-93); 2) use of excessive force by Defendants Knizner, Barkley, Castello, and Eicher (¶ 94-96); and deliberate indifference to medical needs by Defendant DiCio (¶ 97). In their Partial Motion to Dismiss, Defendants move to dismiss only the medical treatment claim against Defendant DiCio in Count 2.[5]

With respect to Plaintiff's claim against Defendant DiCio, in order to state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

---

[5] Although Defendants also moved to dismiss an Eighth Amendment conditions of confinement claim, Plaintiff did not raise such a claim in his Amended Complaint and admits as much in his Response. Consequently, the Court need not address this issue.

Plaintiff's allegations are sufficient to state a claim upon which relief may be granted as to the Defendant DiCio. Specifically, he claims that she failed to provide medical treatment for his open wounds for three and one-half hours while Plaintiff was bleeding profusely and suffering from a concussion These allegations, taken as true, may state a claim for relief based on inadequate medical treatment. *See, e.g.*, Williams v. Klem, Civil No. 3:07-1044, 2008 WL 4453100, 7 (M.D. Pa. Sept. 30, 2008). Thus, the Partial Motion to Dismiss should be denied as to Defendant DiCio.

### G. Fourteenth Amendment

In Count 3 of his Amended Complaint, Plaintiff asserts procedural due process violations with respect to his misconducts, hearings and appeals therefrom. This claim invokes rights as protected by the Due Process Clause of the Fourteenth Amendment. In this regard, the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. Meachum v. Fano, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's claims is whether defendants' actions impacted a constitutionally-protected liberty interest. A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation. Hewitt, 459 U.S. at 466. A

liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process. Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778. The Due Process Clause, however, does not create an inherent liberty interest to remain free from disciplinary or administrative segregation. *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992). Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from restrictive detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees. Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis added). Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have a protected liberty interest in remaining free of disciplinary detention or segregation because his thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the basic conditions of his sentence. In making this determination, the Supreme Court looked at two basic factors: 1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary

segregation were significantly more restrictive.  After reviewing these two factors, the Court concluded that thirty days in disciplinary detention, which was similar in many respects to administrative custody, did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest.

In the case of disciplinary or administrative custody, if the inmate had no protected liberty interest in remaining free of such custody, then the inmate was owed no process, in the form of hearings or otherwise, before or during his placement.  Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.  Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)).  What is an "atypical and significant hardship" is determined by "what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law."  Sandin, 515 U.S. at 486.  Here, Plaintiff received a total sanction of only one-hundred and forty-five days of disciplinary time.  Every court, including the Court of Appeals for the Third Circuit, has concluded that confinement in restricted housing for a period of one year or less does not amount to an atypical or significant hardship under the Sandin analysis.  *See, e.g.*, Scerbo v. Lowe, 326 Fed. App'x 652, 656 (3d Cir. 2009) (eighteen-month period of confinement in maximum security custody did not implicate a protected liberty interest); Toussaint v. Good, 276 F. App'x. 122 (3d Cir. 2008) ("to the extent that Toussaint's claim is based on "false" misconducts that resulted in sixty-and ninety-day stays in the RHU, such stays do not constitute an "atypical and significant hardship" to trigger due process protections"); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.1997) (exposure to conditions of administrative custody for periods as long as 15 months falls within the expected parameters of

sentence imposed).  Moreover, the Court of Appeals for the Third Circuit has held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not allege an atypical and significant hardship sufficient to trigger a liberty interest under <u>Sandin</u>.  *See* <u>Young v. Beard</u>, 227 F. App'x 138 (3d Cir. 2007).  Thus, Plaintiff's allegations concerning his allegedly false misconducts, his hearings thereon, and his appeals therefrom do not allege a violation of his procedural due process rights.  As such, these claims should be dismissed.

## III.    CONCLUSION

Based on the discussion above, it is respectfully recommended that Defendants' Partial Motion to Dismiss (ECF No. 57) be granted in part and denied in part.  Specifically, Defendants' Partial Motion to Dismiss should be granted, and the Complaint dismissed, except as to Plaintiff's claims in Count 2 of the Amended Complaint against Defendants Coleman, Berrier, Zaken, Manchas, Hooper, D. Varner, Rymarowicz, Clark, Williams, Knizner, Barkley, Castello, Eicher and DiCio; all other Defendants should be terminated from this action.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to this report.  Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto.  Failure to timely file objections will constitute a waiver of any appellate rights.

/s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

February 9, 2012

Rasheen Nifas
CA-4950
S.C.I. Fayette
P.O. Box 9999
LaBelle, PA 15450