IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RASHEEN NIFAS, )
)
Plaintiff, ) Civil Action No. 10-1486
)
v. )
) Magistrate Judge Cynthia Reed Eddy
BRIAN V. COLEMAN, Superintendent; )
ET AL., )
Defendants. )

## MEMORANDUM OPINION AND ORDER

On November 5, 2010, Plaintiff, Rasheen Nifas, a Pennsylvania inmate currently housed at the State Correctional Institution at Greensburg, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983 against twenty-seven Defendants employed by the Pennsylvania Department of Corrections (DOC), the majority of whom were employed at SCI-Fayette during the relevant time period. The case was referred to then Magistrate Judge Cathy Bissoon. On April 6, 2011, Plaintiff filed an Amended Complaint (ECF No. 14). Subsequently, Defendants filed a Partial Motion to Dismiss and the case was reassigned to me on October 27, 2011 upon the elevation of Cathy Bissoon to the District Court. On February 9, 2012, I issued a Report and Recommendation recommending that the Partial Motion to Dismiss (ECF No. 71) be granted except as to Plaintiff's claims in Count 2 of the Amended Complaint against Defendants Coleman, Berrier, Zaken, Manchas, Hooper, D. Varner, Rymarowicz, Clark, Williams, Knizner, Barkley, Castello, Eicher and DiCio. On March 5, 2012, District Judge Joy Flowers Conti issued a Memorandum Order adopting the recommendations in my Report (ECF No. 74).

On March 14, 2012, I entered an Order for discovery. On July 27, 2012, in accordance with the provisions of 28 U.S.C. § 636(c) and Fed. Rule Civ. Proc. 73, the parties consented to

1

have a United States magistrate judge conduct all proceedings in this case, including the entry of final judgment. *See* ECF Nos. 88 and 91. On June 20, 2012, the remaining Defendants filed a Motion for Summary Judgment (ECF No. 94), a Brief in Support thereof (ECF No. 95), and a Concise Statement of Material Facts (CSMF) (ECF No. 96). On July 25, 2012, Plaintiff filed a Response (ECF No. 100), a Brief in Opposition (ECF No. 101), an Appendix (ECF No. 102), and a Responsive Concise Statement of Facts (ECF No. 103). The motion is ripe for disposition by this Court.

## A. Standard of Review

Federal Rule of Civil Procedure 56(a)[1] provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. F. R. Civ. P. 56(e); Williams v. Borough of West Chester, 891 F.2d 458, 460–461 (3d Cir. 1989) (the non-movant must present affirmative evidence -- more than a scintilla but less than a preponderance -- which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party cannot rest "solely on

---

[1] Pursuant to the 2010 amendments to the Federal Rules of Civil Procedure, the oft-cited summary judgment standard is now located in Rule 56(a) rather than 56(c), with a slight change of wording. Although the word "issue" has been replaced with "dispute," this change does not affect the substantive standard or the applicability of prior decisions construing the standard. *See* Fed. R. Civ. P. 56(a) advisory committee's note.

assertions made in the pleadings, legal memoranda, or oral argument," Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), but must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. *See also* Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting Anderson, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the non-moving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). Moreover, *pro se* pleadings are to be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

## B. Material Facts

The remaining claims assert violations of the Eighth Amendment. Specifically, Plaintiff asserts allegations of failure to protect, use of excessive force and deliberate indifference to medical treatment. The relevant material facts as to these claims are as follows.

3

In early 2010, Plaintiff filed several grievances complaining that RHU Block worker inmates in the RHU were sexually harassing him. In this regard, on January 29, 2010, Plaintiff submitted Grievance No. 305756 complaining harassment and threats to his mental and physical health. On February 9, 2010, he received the following response from Correctional Officer Randy Clark.

> I am in receipt of your grievance dated 1-29-2010.
>
> COMPLAINT: In your grievance you claim that Sgt Snyder told another inmate that you could be released from the Restricted Housing Unit at any time, insinuating that you are on "Protective Custody". You claim that this is a lie and would never happen. You claim that Sgt Snyder made a false allegation that he knew you from population to the known snitch Block Worker Tamayo. You claim that Tamayo informed you that Sgt Snyder claimed you were an informant somehow. You claim that these actions slandered your reputation and that the lies spread by Sgt Snyder defamed your character. You claim that Sgt Snyder knew these lies would cause conflict between other prisoners and staff and that Tamayo was spreading these lies for favors. You claim that you have a witness to this action but do not name the person. You claim that you spoke with Sgt Snyder on 1-29-2010 and he confirmed that he made these false allegations.
>
> FINDING OF FACTS: This Lieutenant interviewed Sgt Snyder concerning this grievance on 2-9-2010. Sgt Snyder reported that he remembered speaking with you at your cell. He stated that he had told you if he was a regular Sergeant on the unit he would attempt to hire you as a Block Worker. He reported that at no time did he speak of you to any other inmates on the unit. He stated that he did not offer favors to any inmate to spread any lies concerning you nor did he tell you that he had spread lies about you.
>
> This Lieutenant was unable to verify this information from your witness because you do not name him/her.
>
> DECISION: This grievance is frivolous and without merit. This grievance is denied.

ECF No. 70-2, p. 43. Plaintiff appealed and received the following response from Superintendent Coleman on March 3, 2010.

> I am in receipt of your appeal of grievance #305756. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office.

4

Lt. Clark's interview of Sgt. Snyder concludes that Sgt. Snyder did not make any of the remarks as alleged in your grievance. Therefore, there is no need to interview any inmates or staff concerning your allegations. The inmate you refer to in your grievance is a block worker because he has proven that when he comes out of his cell without hand cuffs he can be trusted to do his job and is then returned to his cell. I can find nothing in your appeal to substantiate the claims of your grievance.

Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review. I am upholding the Initial Review Response and denying your appeal.

ECF No. 70-2, p. 41. Plaintiff filed an appeal of this grievance to the central office and received

the following response.

This office is in receipt of your appeal to the above grievance in which you claim that a named Sergeant made inappropriate comments about you to another inmate with the intention of causing or creating conflict between you and other prisoners. You also claim that your reputation is slandered and call this "defamation of character." You indicate that you have an affidavit by another prisoner attesting to this but you neglect to submit his name. A review of the record reveals that the grievance officer investigated your allegations and provided you a response. Your allegations against this Sergeant were unsubstantiated. Your grievance was appropriately deemed frivolous.

You are advised that any issues not presented in your original grievance will not be addressed at final review.

ECF No. 70-2, p. 39.

On February 24, 2010, Plaintiff submitted Grievance No. 308656 complaining that

inmate Deangelo Tamayo was constantly making sexual remarks and stealing his boxers from

the laundry. On February 25, 2010, his grievance was returned for failure to follow DC-ADM

804 policy (ECF No. 70-3, p. 6). He appealed and on March 22, 2010, he received the following

response from Superintendent Coleman.

I am in receipt of your rejected grievance #308656 and your appeal of such. Your grievance was rejected and returned to you because you have failed to comply with the directives of the DC ADM 804, Inmate Grievance System.

Your grievance was appropriately rejected because it was not dated,
therefore it could not be determined if your issues were in accordance with
the requirement that claims be addressed within 15 working days. I am
removing the rejection for #7 as your grievance is based on allegations of
sexual harassment. Although the grievance remains rejected, your
complaint will be forwarded to the Security Office for investigations.

Your appeal is dismissed.

ECF No. 70-3, p. 4. Plaintiff filed an untimely appeal of this grievance to the central office. ECF

No. 70-3, p. 2.

On March 1, 2010, Plaintiff submitted Grievance No. 308906 complaining that inmate

Tamayo was making sexual remarks and that Lt. Rymarowicz moved him to a cell where inmate

Tamayo could continue to harass him. On March 26, 2010, he received the following response

from Lt. Salvay.

The following is a summary of my findings regarding your grievance:

COMPLAINT: You claim that on 2126/10 Lt. Rymarowicz moved you from
LC2020 cell to LC1007 so that Inmate Tomeo could sexually harass you. You
state that Inmate Tomeo constantly makes sexual comments towards you. You
claim that Lt. Rymarowicz is retaliating against you because you filed a
grievance. You request compensation and punitive damages.

FINDING OF FACT: I spoke to Lt. Rymarowicz concerning your complaint and
he stated that he did not move you so that Inmate Tomeo could sexually harass
you. I also spoke to Inmate Tomeo and he claimed that he never made any
inappropriate comments towards you. Lt. Rymarowicz did not retaliate against
you because you filed a grievance in the past. Your request for compensation and
punitive damages is denied.

This grievance is frivolous and has no merit.

ECF No. 70-3, p. 14. Plaintiff appealed and received the following response from

Superintendent Coleman on April 21, 2010.

I am in receipt of your appeal of grievance #308906. In preparing this response I
have reviewed your original grievance, the Grievance Officer's response, and your
appeal to this office.

6

You offer no proof that Lt. Rymarowicz actions were done for retaliation only unsubstantiated statements. Your allegations of sexual harassment by this inmate have been investigated through other grievances you have filed and they have been found to be unsubstantiated. If you are having mental and physical health problems, sign up for sick call or send a request to the Psychology department.

Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review. I am upholding the Initial Review Response and denying your appeal.

ECF No. 70-3, p. 12. Plaintiff filed an untimely appeal of this grievance to the central office. ECF No. 70-3, p. 9.

On February 28, 2010, Plaintiff submitted Grievance No. 308909 complaining that inmate Tamayo was taking his grievances. On March 26, 2010, he received the following response from Lt. Clark.

I am in receipt of your grievance dated 3-1-10.

COMPLAINT: You claim that you were forced to file a grievance against another inmate, "Tomayo", for Sexual Harassment on 2-25-10. You claim that you never received your pink copy of the grievance. You claim that on 2-27-10 and 2-28-10 "Tomayo" had the grievance "Exploiting on the pods throughout the RHU". You claim that "Tomayo" is a CSI Informant. You claim th[at] "Tomayo" could not have had the grievance unless he was given it by staff, R. House, Mary Kusher and Jane Doe, who collect the grievances on the unit. You claim that you have other mail that is missing. You claim that Security Officer Hooper, Superintendent Coleman, Lt Rymarowicz. Sgt Switzer and Unit Manager C. Walker are all involved to retaliate against you. You claim that all of these people are responsible for giving your grievance to "Tomayo". You claim that you asked for a pink copy of the grievance filed on 2-25-10 regarding Sexual Harassment against an informant inmate. You claim that your entire grievance was given to "Tomayo". You claim that there is no way that this CSI Informant could have received your grievance without Administration giving it to him. You are seeking to exhaust remedies, seeking compensation and seeking punitive damages for the threat of your mental and physical health mentioned.

FINDING OF FACTS: There is staff member assigned to collect all inmate grievances. Unit staff does not have a key for the grievance boxes on the pods. The staff member who collects the grievances is not permitted to give a grievance

7

to another inmate. When the grievances are collected, they are removed from the unit. The other staff members that you mention would not be in contact with the inmate that you accuse in this grievance therefore could not give the inmate your grievance.

DECISION: This grievance is frivolous and without merit. Your request for monetary compensation is denied.

ECF No. 70-3, p. 22. Plaintiff appealed and received the following response from

Superintendent Coleman on March 25, 2010.

I am in receipt of your appeal of grievance #308909. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office.

Throughout your grievance and appeal you make many allegations but do not offer any proof to substantiate these allegations. No one gave your grievance to inmate worker Tamayo (sic). You have offered no proof that this inmate was in possession of your grievance. As Lt. Clark explained, a staff member from the grievance office picks up the grievances from the locked box on each pod of both L and J. No one else handles them nor sees them until they reach the grievance office.

Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review. I am upholding the Initial Review Response and denying your appeal.

ECF No. 70-3, p. 20. Plaintiff filed an untimely appeal of this grievance to the central office.

ECF No. 70-3, p. 18.

On March 15, 2010, Plaintiff was being escorted from L-Unit to J-Unit by Sgt. Knizner and Officer Barkley. Sergeant Knizner was pushing the property cart. While out of sight of the video camera, Plaintiff attempted to kick inmate block worker Jose Rodriguez, who was sitting on a milk crate just off the main hallway where Knizner and Barkley were escorting Plaintiff. Plaintiff claims that Rodriguez attempted to spray him in the eyes with a cleaning liquid. Barkley immediately moved Plaintiff forward, away from Rodriguez, and he stumbled headfirst into the corner of the door leading to the sallyport area. Plaintiff was then taken to the ground by

8

Barkley, Knizner and Corrections Officer J. Johnson. Defendant Lieutenant Rymarowicz sent Defendant Corrections Officer Eicher to get the hand-held video camera to start filming as soon as possible after the incident occurred.

Plaintiff immediately was moved to the strip cage at 7:05 p.m. Defendant LPN Ida DiCio arrived to give Plaintiff medical treatment at 7:09 p.m. The video clearly shows that Nurse DiCio took several pictures of Plaintiff's injuries and cleaned and dressed the injuries to his face. She then examined and took pictures of Plaintiff's shoulder and took a statement from Plaintiff before she left the strip cage area. Plaintiff's statement, made at 7:16 p.m., in its entirety, was "[t]hey was moving me. Block Workers were out. I feel threatened and all I remember is being on the floor with head busted open." ECF No. 95-1, p. 11. Nurse DiCio noted that Plaintiff had "blood all over facial area on right and left side of face more on right side with hematoma on right temple. Laceration about 2 inches long on top of hemtoma. Noted abraised area on right shoulder." She noted that she cleansed the area and applied pressure dressings and notified medical for possible sutures.

After receiving treatment from Nurse DiCio, Plaintiff was escorted to a Psychiatric Observation Cell (POC) in the infirmary and kept there until Physician's Assistant (PA) Christopher Myers arrived to suture Plaintiff's head laceration.

On March 16, 2010, Plaintiff submitted Grievance No. 311129 complaining of assault and excessive force. On March 19, 2010, he received the following response.

The following is a summary of my findings regarding your grievance:

COMPLAINT: You state on 3/15/10, you were being escorted from L-Unit to J-Unit. The L-Unit blockworker attempted to spray you in the eyes with a cleaning liquid and Officers J. Eicher and Costello allowed it to occur. You claim you were assaulted by Sgt. Knizner and Officer Barkley by them ramming your head into the steel edge of the door and ramming you to the ground. You state Officers

9

Eicher and Costello jumped on you and attempted to break your collarbone and back.

You seek relief of Seventy-Thousand Dollars from each defendant for their deliberate violations.

FINDING OF FACT: Since your grievance raises an issue of abuse, an official investigation will be conducted to address your claim. You will receive an answer at the completion of the investigation

DECISION: This grievance is RESOLVED.

ECF No. 70-4, p.6. Plaintiff appealed and received the following response from Superintendent

Coleman on April 6, 2010.

I am in receipt of your appeal of grievance #311129. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office.

You have raised allegations of abuse in your grievance; therefore your allegations will be investigated by our Security Office. As Lt. Tkacs informed you, you will be notified when the investigation is complete. Pictures and video will be used in this investigation.

This issue and appeal are resolved.

ECF No. 70-4, p. 4. Plaintiff filed an appeal of this grievance to the central office and received

the following response on May 13, 2010.

This office is in receipt of your appeal to the above grievance in which you make an allegation of abuse or excessive force against correctional staff. You claim to be having medical and psychological issues as a result. You seek monetary relief. A review of the record reveals that as a result of your grievance, the Office of Professional Responsibility was contacted. There was an investigation conducted regarding your claims. Your allegations were unsubstantiated. If you feel that you have medical or other problems, you are encouraged to seek the assistance of appropriate staff. Your request for monetary relief is denied.

ECF No. 70-4, p. 2.

An investigation was done into Plaintiff's allegations of excessive force by Lieutenant

Michael Tkacs. The investigation report was submitted by Intelligence Captain Joseph F.

Trempus to the David Novitsky, Deputy Director of the Department of Corrections' (DOC) Office of Professional Responsibility (OPR) and provides as follows.

## SYNOPSIS

This investigation is predicated on a DC-804 submitted by Inmate Nifas CA4950. He states on 3/15/10, he was being escorted from L-Unit to J-Unit. The L-Unit block worker attempted to spray him in the eyes with a cleaning liquid and Officers J. Eicher and Costello allowed it to occur. Inmate Nifas claims he was assaulted by Sgt. Knizner and Officer Barkley who rammed his head into the steel edge of the door and also rammed him to the ground. He states Officers Eicher and Costello jumped on him and attempted to break his collarbone and back.

The Security Office received the Inmate Grievance and assigned Lt. Michael Tkacs the investigation. Lt. Tkacs conducted interviews with the following individuals: Lt. Rymarowicz, Sgt. Knizner, CO Barkley, CO A. Eicher, CO Costello, CO J. Johnson, CO Holt, L.P.N. DiCio, Inmate Nifas and [the block worker] Inmate. The video from L-Unit Sally Port, hand held video footage, DC-141, DC-709, DC-457 and DC ADM 06.05.01 attachment 1 C were reviewed.

## SUMMARY OF FINDINGS

The investigation conducted by the SCI Fayette Security Office proved Inmate Nifas was being escorted from L Unit to J Unit by Officer Barkley and Sgt. Knizner, who was pushing the property cart when Inmate Nifas attempted to kick the block worker inmate. [the block worker inmate] was sitting on a milk crate just off of the main hallway where the staff was escorting Inmate Nifas. Inmate Nifas contends [the block worker inmate] attempted to spray him with a spray bottle. The statements from [the block worker inmate] and the staff conducting the escort indicate [that the block worker inmate] did not attempt to spray Inmate Nifas; in fact, he was not even in possession of a spray bottle at that time.

Inmate Nifas denies kicking at [the block worker inmate]. The video clearly shows, while being escorted down the main hallway on the unit, Inmate Nifas kicks his right leg sideways at something that is out of the view of the camera. The staff and [the block worker inmate] state [the block worker] was sitting on a milk crate a few feet down the corridor that leads to the strip cage from the main hallway. Officer Barkley immediately moved Inmate Nifas forward away from [the block worker]. Inmate Nifas was off balance because he only had one leg to support his weight when he kicked at [the block worker]. Inmate Nifas stumbled headfirst into the corner of the doorway leading to the sallyport area and was subsequently taken to the ground in the sallyport area by Officer Barkley, Officer J. Johnson and Sgt. Knizner.

Inmate Nifas was provided medical attention in the unit strip cage by LPN Dicio, who cleaned and dressed his injuries to his face. LPN Decio indicated Inmate Nifas was going to have to be seen by the Dr. for potential sutures. Inmate Nifas was escorted without incident to the medical department by J Unit staff as ordered by Lt Rymarowicz, to prevent any additional problems with the L Unit staff.

The video of the incident recorded from the fixed sallyport camera supports the statements of the staff and [the block worker]. The staff can be seen controlling Inmate Nifas on the ground. Lt. Rymarowicz ensured the hand held video was used as soon as possible after the incident occurred. The hand held video clearly shows the staff remained professional throughout the incident, none of the staff were observed striking or jumping on Inmate Nifas.

## CONCLUSION

The investigation conducted by Lt Tkacs concluded Inmate Nifas attempted to kick the inmate worker, was removed from the immediate area and taken to the ground. The incident was precipitated by the attempted assault by Inmate Nifas on the block worker. The staff appropriately moved Inmate Nifas away from the area reducing any possibility of any additional confrontation between Inmate Nifas and [the block worker]. Inmate Nifas was off balance due to his kick at [the block worker] and stumbled, along with the escorting staff into the sallyport doorway and was eventually taken to the ground by the staff. There was no excessive force used by the staff on Inmate Nifas. Inmate Nifas is responsible for the events that took place on this day.

ECF No. 95-1, pp. 3-5.

On March 17, 2010, Plaintiff submitted Grievance No. 3111128 complaining of medical

negligence. On March 22, 2010, he received the following response.

The following is a summary of my findings regarding your grievance:

COMPLAINT: The grievant states that he is not receiving proper medical care.

FINDING OF FACT:

1. On March 15, 2010 you were involved in an unplanned use of force while being moved in the RHU.

2. You were seen by the nurse and the PA placed sutures in your head laceration. You were placed in a POC cell until you were returned to the RHU on March 18, 2010.

3. You were assessed and observed and you did not request to be seen on sick call for your alleged injuries.

4. You were seen by the PA for suture removal on March 19, 2010 but refused to come out of your cell.

5. You need to utilize sick call for your medical complaints.

6. Your request for compensatory damages is denied along with this frivolous grievance.

Conclusion: No merit.

ECF No. 70-3, p. 37. Plaintiff appealed and received the following response from

Superintendent Coleman on April 6, 2010.

I am in receipt of your appeal of grievance #311128. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office.

Your allegations are baseless. You were involved in an unplanned use of force which was initiated by you. You received appropriate medical care for your injuries to include sutures. Your brush burned shoulder did not require medical treatment and medical staff found that an X ray was not medically necessary. You were housed in the infirmary for observation and after your return to J Unit you did not file any sick call requests regarding your other alleged injuries. You did refuse to have your sutures taken out by PA Myers on March 19 and you did not cooperate to have them removed until March 26, 2010.

Based on the above information I find the response from the investigating officer appropriate and your appeal lacking any credible evidence upon which I would consider remanding the issue for further review. I am upholding the Initial Review Response and denying your appeal.

ECF No. 70-3, p. 35. Plaintiff filed an appeal of this grievance to the central office and received

the following response.

A review of the record by the Bureau of Health Care Services shows that the medical care provided by the medical department of SCI Fayette to you has been reasonable and appropriate. You claim that you did not receive proper medical care on 3/15/10 after an unplanned use of force. Your medical records were reviewed and your concerns were discussed with the medical staff at SCI Fayette. Proper medical care was provided for the injuries you received. X-rays and an MRI were not indicated at that time. You were uncooperative with the medical

staff and at times refused follow up care. There has been no evidence of neglect
or deliberate indifference to you. Any request for monetary relief is denied.

ECF No. 70-3, p. 32.

## D. Liability under 42 U.S.C. § 1983

The Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42
U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold
requirements. He must allege: 1) that the alleged misconduct was committed by a person acting
under color of state law; and 2) that as a result, he was deprived of rights, privileges, or
immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S.
42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*,
Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant
must have personal involvement in the alleged wrongs; liability cannot be predicated solely on
the operation of respondeat superior. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly,
individual liability can be imposed under section 1983 only if the state actor played an
"affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d
Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a
defendant can be shown by alleging either personal direction or actual knowledge and
acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207. *See also* Keenan v.
Philadelphia, 983 F.2d 459, 466 (3d Cir. 1992); Andrews v. Philadelphia, 895 F.2d 1469, 1478
(3d Cir. 1990).

Moreover, a supervising public official has no affirmative constitutional duty to supervise
and discipline so as to prevent violations of constitutional rights by his or her subordinates.
Notwithstanding, when a supervising official knowingly permits a continuing custom or policy

14

that results in harm to the plaintiff, 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (Colburn I). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." *Id.* (quoting Chinchello, 805 F.2d at 133). *See also* Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir. 1997).

### E. The Eighth Amendment

Plaintiff's allegations invoke liability under the Eighth Amendment, which provides as follows.

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner

has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff sets forth three separate Eighth Amendment claims in Count Two of his Amended Complaint: 1) failure to protect; 2) excessive force; and 3) deliberate indifference to medical needs.

1. Failure to Protect

Plaintiff claims that Defendants Coleman, Zaken, Berrier, Manchas, Hooper and D. Varner failed to protect him from the constant threats of violence and ongoing sexual harassment

16

from the RHU block workers. He further asserts that Defendants Colemen, Berrier, Manchas, Hooper, Rymarowicz, Clark and Williams failed to take reasonable measures to protect his safety when the block workers tried to spray detergent in his eyes for reporting the sexual abuse. He also claims that Defendants Colemen, Zaken, Berrier, Manchas, Hooper, Rymarawicz, Clark, D. Varner and Williams disregarded a substantial risk of serious harm.

The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other prisoners. *Id.* at 833. "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, when an inmate brings a claim for failure to prevent harm, he must show: 1) that he is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official acted with deliberate indifference to inmate health or safety. *Id.* (citations omitted). An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. After a prisoner makes a *prima facie* demonstration of deliberate indifference, an official can rebut the allegation "either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring." Beers–Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001).

Here, Plaintiff alleges that Defendants failed to protect him from inmate Rodriguez, who allegedly attempted to spray some sort of cleaning solution in his eyes. Plaintiff asserts that, prior to this incident, he warned Defendants about the dangers posed by the RHU block workers. Specifically, he contends that he wrote Grievance Nos. 308656, 308906, 311359 and 308909.

17

Defendants contend that Plaintiff's claim must fail because he has not established that they were aware of any risk to his safety, let alone a substantial risk of serious bodily harm. They argue that Plaintiff's complaints about Inmate Tomeo in his grievances did not alert them about any danger posed by Inmate Rodriguez. Furthermore, Defendants contend that Plaintiff did not suffer any serious bodily injury that was caused by another inmate.

The Court agrees that Plaintiff has failed to present sufficient evidence of deliberate indifference to a substantial risk of serious harm. Based on Plaintiff's own account, the grievances he filed merely stated that inmate Tomeo was sexually harassing him. When Superintendent Coleman became aware of this grievance, he sent it back for an investigation into Plaintiff's allegations of sexual harassment. The Court notes that none of the grievances communicate any threat of violence from inmate Rodriguez.

Plaintiff's Response in Opposition does not provide any additional information that would create a genuine issue of fact appropriate for trial. Plaintiff provides no specific details of what, if anything, he told prison officials about Inmate Rodriguez's threats or previous acts of violence; indeed, he has not submitted any evidence to support his claim that Inmate Rodriguez was prone to violence against him.

Finally, even if the Court assumes that Inmate Rodriguez had a history of violence of which Defendants were aware, Plaintiff has also failed to demonstrate that the alleged deprivation he suffered was "sufficiently serious," which is required to sustain a failure to protect claim. *See* Farmer, 511 U.S. at 834. Plaintiff suffered no injury by inmate Rodriguez. The courts within the Court of Appeals for the Third Circuit have found that a plaintiff's failure to protect claim cannot proceed in the absence of a serious injury. *See* Matthews v. Villella, 381 F. App'x 137, 139 (3d Cir. 2010) (affirming district court's dismissal of failure to protect claim,

finding that the plaintiff's "alleged injuries do not rise to the level of 'serious harm,' and he has not alleged a 'pervasive risk of harm' from this single incident"); Jones v. Pugh, Civ. No. 10–0359, 2011 WL 5244422, at *13 (M.D. Pa. Oct. 6, 2011) (finding that the plaintiff "had not met either the objective or subjective element of a failure to protect claim ... since the evidence shows that the alleged single push by [the defendant] and [the plaintiff's] injury were only minor"); Knauss v. Shannon, Civil No. 08–1698, 2010 WL 569829, at *14 (M.D. Pa. Feb. 12, 2010) (granting summary judgment after finding that the plaintiff had "not demonstrated a substantial risk of serious harm because ... the force used and injury sustained were minor").

Here, Plaintiff has failed to show that he either suffered significant harm or was at substantial risk for such harm. Accordingly, the Court will grant Defendants' Motion for Summary Judgment on the failure to protect claim. *Accord* Heggenmiller v. Edna Mahan Correctional Institution for Women, 128 F. App'x 240, 245-246 (3d Cir. 2005).

2.    Excessive Force

Plaintiff claims that Defendants Knizner and Barkley used excessive force by ramming Plaintiff's head into the steel edge of the L-Block entrance and Defendants Castello and Eicher used excessive force by jumping on his back and right shoulder after he was subdued. The Cruel and Unusual Punishments Clause of the Eighth Amendment protects inmates against the application of excessive force by correctional officers. *See* Whitley v. Albers, 475 U.S. 312, 318-19 (1986). What is required to prove an Eighth Amendment violation "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992). In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this inquiry

include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id.*

In reviewing excessive force cases in the prison context, the Supreme Court has instructed as follows.

> When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (internal quotations omitted).

The Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force. Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002). As recognized by the Court of Appeals for the Third Circuit "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no reasonable person could conclude that a corrections officer acted maliciously and sadistically." Reyes v. Chinnici 54 F. App'x 44, 48-49 (3d. Cir.

2002) (holding force was *de minimis* where corrections officer punched inmate in the shoulder to avoid being spit on). *Accord* Thomas v. Ferguson, 361 F. Supp .2d 435, 439-41 (D.N.J. 2004) (finding that, "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct ... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,' " where inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D. Del. Jul.29, 2003) (same where officer sprayed inmate in the face with mace).

Here, the record evidence, including the medical evidence, fails to describe a use of force that is "repugnant to the conscience of mankind." Rather, the evidence shows that the use of force was objectively *de minimis* and insufficient to establish an Eighth Amendment violation. In this regard, the undisputed record facts show Plaintiff attempted to kick inmate Rodriguez. At that point, Barkley immediately moved Plaintiff forward, away from Rodriguez. In doing so, Plaintiff stumbled headfirst into the corner of the door leading to the sallyport area. Plaintiff was then taken to the ground by Barkley, Knizner and Corrections Officer J. Johnson. Plaintiff admits that he failed to obey a direct order from Officer Knizner to go down. *See* Plaintiff's Deposition testimony, page 15 (ECF No. 102-20, p. 6). After this incident, Defendants undertook an investigation and the investigation report was submitted by Intelligence Captain Joseph F. Trempus to David Novitsky, Deputy Director of the Department of Corrections' Office of Professional Responsibility (OPR).

As to the first factor, the need for application of force is obvious. Plaintiff was threatening violence to another inmate. As to the second factor, the relationship between that need and the amount of force used, the video clearly shows that Defendants merely sought to restrain Plaintiff and contain the risk. As to the third factor, the threat reasonably perceived by

the responsible officials, inmate violence clearly is one of the most serious threats to institutional safety within a prison. As to the fourth factor, efforts made to temper the severity of a forceful response, Lieutenant Rymarowicz immediately sent Corrections Officer Eicher to get the hand-held video camera to start filming as soon as possible after the incident occurred. Finally, as to the fifth factor, serious injury, Plaintiff's injuries were minimal and were the result of his own conduct.

"Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). The record facts, in addition with the absence of any significant injury, support a conclusion that the force used with respect to the instant action was *de minimis*. Therefore, Defendants' Motion for Summary Judgment will be granted with respect to Plaintiff's excessive force claim. *Accord* Dockery v. Beard, Civil No. 12-3317, 2013 WL 139624, 2-3 (3d Cir. Jan. 11, 2013) (evidence of slight abrasions indicated that officers applied minimal force in a good-faith effort to maintain or restore discipline when prisoner failed to obey order); Smith v. Hulick, No. 97–801, 1998 WL 84019 (E.D. Pa. Feb.25, 1998), *aff'd*, 208 F.3d 206 (3d Cir. 2000) (holding that the District Court properly granted summary judgment for the defendant correction officer where the defendant punched the plaintiff, who was not in restraints, once in the face and tackled the plaintiff after the plaintiff disobeyed orders holding that the force used was *de minimis*); Hopkins v. Apadaca, Civil No. 1:10-166, 2012 WL 1999487 (W.D. Pa. June 4, 2012); Hickox v. Blair County, Civil No. 3:11-78, 2012 WL 6203009 (W.D. Pa. Dec. 12, 2012); Brandon v. Nazorovich, Civil No. 2:02-343, 2009 WL 891873 (W.D. Pa. March 31, 2009). *See also* Burr v. Hasbrouck Heights Police Dept., 131 Fed. App'x 799, 803 (3d Cir. 2005) (affirming summary judgment in favor of defendant police officers on a Fourth Amendment claim that

22

unreasonable force was used in arresting plaintiff because "small bruises" on her arms did not suggest objectively unreasonable force).

### 3. Failure to Intervene

A liberal reading of Plaintiff's claims indicates that he is asserting a failure to intervene claim. The Eighth Amendment requires prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners, as well as at the hands of guards or other state actors. Farmer, 511 U.S. at 833. Thus, a corrections officer's failure to intervene in a beating can be the basis for liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and refused to do so. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). However, in order for liability to attach under section 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was a realistic and reasonable opportunity to intervene. *Id.* at 651.

Here, Plaintiff has failed to substantiate his claim that excessive force was used against him. As Plaintiff has failed to show that existence of a constitutional violation, Defendants cannot be held liable for failure to intervene. Accordingly, they are entitled to summary judgment as to that claim as well. *Cf.* Taylor v. Kveton, 684 F. Supp. 179, 183 n. 6 (N.D. Ill. 1988) (noting, in granting an officer summary judgment on his failure to intervene to loosen the plaintiff's too-tight handcuffs, that there was no evidence that the officer was aware the handcuffs were too tight).

### 4. Failure to Provide Medical Treatment

Plaintiff's final claim asserts an Eighth Amendment claim alleging failure to provide adequate medical treatment. To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 427 U.S. 107 (1978). The first showing requires the court objectively to determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). *See also* Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979) (noting that the failure to provide necessary psychological or psychiatric treatment to inmates with serious mental or emotional disturbances will result in the infliction of pain and suffering just as results from the failure to treat serious physical ailments).

Plaintiff has failed to demonstrate that Defendants were deliberately indifferent to his medical needs. The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious consequence of his action. Board of County Commissioners of Bryan County v. Brown, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference

24

could be drawn that a substantial harm exists and he must also draw the inference. Farmer v. Brennan, 511 U.S. 825, 837 (1994). An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id.* Moreover, deliberate indifference to a serious medical need of a prisoner is distinguishable from a negligent diagnosis or treatment of a medical condition; only the former conduct violates the Eighth Amendment. Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. Kost v. Kozakiewicz, 1 F.3d 176, 185 (3d Cir. 1993); Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in Estelle v. Gamble, 427 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm. The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

25

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act.

Gamble, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Thus, while an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." Layne v. Vinzant, 657 F.2d 468, 473 (1st Cir.1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990) (citations omitted). Accord Young v. Quinlan, 960 F.2d 351, 358 n. 18 (3d Cir.1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

Here, Plaintiff arrived at the strip cage at 7:05 p.m. Defendant LPN Ida DiCio arrived to give Plaintiff medical treatment at 7:09 p.m. She took several pictures of Plaintiff's injuries and cleaned and dressed the injuries to his face. She then took pictures of Plaintiff's shoulder, took his statement and then called the doctor for sutures. After receiving treatment from Nurse DiCio, Plaintiff was escorted to a POC in the infirmary and kept there until PA Myers arrived to suture his head laceration.

The record evidence in this case simply does not show that Defendants acted with deliberate indifference for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Thus, Defendants are entitled to summary judgment with respect to this claim.

**AND NOW**, this 11th day of February, 2013;

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 94) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.


Cynthia Reed Eddy
United States Magistrate Judge

Rasheen Nifas
CA-4950
S.C.I. Fayette
P.O. Box 9999
LaBelle, PA 15450